UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-----------------------------------------------------------------
Jannelle R. Turner,
        Plaintiff,

   -against-                                    03-CV-1217 (KAM)
                                               Memorandum & Order

Agambila Apaamoore,
        Defendant.

-----------------------------------------------------------------

Handan Kayisoglu,
        Plaintiff,

   -against-                                    03-CV-1909 (KAM)
                                               Memorandum & Order

Agambila Apaamoore,
        Defendant.

-----------------------------------------------------------------

Hilda Everett,
        Plaintiff,

   -against-                                    03-CV-3007 (KAM)
                                               Memorandum & Order

Agambila Apaamoore,
        Defendant.

-----------------------------------------------------------------

---------------------------------------------------------------
Mei Lin,

                Plaintiff,

  -against-                                          04-CV-1762 (KAM)
                                                          Memorandum & Order
Agambila Apaamoore,

                Defendant.

---------------------------------------------------------------

Ibrahima Diallo,

                Plaintiff,

  -against-                                        04-CV-3777 (KAM)
                                                          Memorandum & Order
Agambila Apaamoore,

                Defendant.

---------------------------------------------------------------

**Kiyo A. Matsumoto, United States Magistrate Judge:**

By Order of United States District Judge Raymond J. Dearie dated June 15, 2005, and upon the consent of all parties, disposition of this matter was referred to the undersigned magistrate judge, pursuant to 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73, to conduct all necessary proceedings and order the entry of judgment in the above cases.

## BACKGROUND

On or about January 9, 2003, defendant Agambilia Apaamore ("Apaamore" or "defendant"), while driving a 1987 Mercedes Benz (New York license no. WN359R) at the intersection of Canal Street and Church Street in New York, New York, crashed through the storefront of a business known as "Canal Street Plastics." As a result, all of the above-mentioned

plaintiffs were injured, with the exception of New York state court plaintiff Kim Wilson[1], who sustained lethal injuries. Although plaintiffs in the above captioned cases commenced their federal actions at different times, the actions were, in effect, consolidated for purposes of discovery. To this end, the parties conferred with the Court frequently to address scheduling, the coordination of discovery and the status of an underlying declaratory judgment action by defendant's insurer in New Jersey state court, to avoid the unnecessary duplication of efforts and to preserve the parties' and the Court's resources.

To resolve this matter expeditiously and without the further expenditure of plaintiffs' limited financial resources, the parties in the above-captioned cases, and in the New York state case by the Estate of Kim Wilson, executed a Mediation Agreement, Stipulation and Order (docket no. 24) ("Mediation Agreement"), consenting to the undersigned determining the amount of damages that each plaintiff will receive from the defendant's "100/300" insurance policy issued by New Jersey Skylands Insurance Company (the "policy"), under which recovery by any individual plaintiff is limited to $100,000, irrespective of the nature, extent and severity of injury, and the total recovery for each occurrence is limited to $300,000.[2]

The Court cannot overstate the difficulty it faced in apportioning the limited funds of $300,000 in light each plaintiffs' compelling submissions setting forth the nature of their injuries. In addition to considering plaintiffs' submissions, the Court has also conducted research into damages awards under circumstances and for injuries similar to those presently before the

---

[1] The Estate of plaintiff-decedent Wilson brought an action for wrongful death captioned Scott Stapleton v. Apaamore Agambilia, et al., in the Supreme Court of the State of New York, New York County, Index No. 111013/04.

[2] A review of defendant's automobile insurance policy issued by New Jersey Skylands Insurance Group (policy no. 0118798301), indeed reflects a limit on liability for bodily injury consistent with the parties' agreement.

Court. This research has proved to be of only marginal assistance, given that such awards generally are not constrained by multiple plaintiffs sharing limited funds as they are here. With this in mind, the Court will distribute the limited funds in a manner it considers fair and reasonable in view of the circumstances.

For the reasons set forth below, the Court orders that the $300,000 in insurance proceeds be distributed as follows:

>Estate of Kim Wilson shall receive $65,000.
>
>Hilda Everett shall receive $70,000.
>
>Handan Kayisoglu shall receive $60,000.
>
>Jannell Turner shall receive $35,000.
>
>Mei Lin shall receive $35,000.
>
>Ibrahim Diallo shall receive $35,000.

### **Estate of Kim Wilson**

Kim Wilson, age 43 at the time of her death, was, among other things, a wife, mother and homemaker. She is survived by her husband, Scott Stapleton, and only child, her son Michael Lucero, age 24 at the time of his mother's death. Although she was not employed at the time of her death, Wilson's counsel indicated that she lived with her husband and contributed to household maintenance by cooking several nights a week and cleaning the house. Counsel also states that Wilson and her son had a close relationship, spoke regularly over the telephone and in person, and that she provided advice, counsel and guidance to her son.

As reflected by her autopsy report filed with the Office of the Chief Medical Examiner of the City of New York, Wilson died as a result of blunt force trauma to the head,

neck, spine and spinal cord, multiple fractures, hemorrhage and abrasions. There is no evidence nor any assertion in plaintiff's submission to the Court that Wilson suffered from physical pain from the time of the impact to her death. Instead, counsel asserts that Wilson suffered from "pre-impact terror[,]" citing a New York State case awarding damages for pre-impact terror followed by instantaneous death.

In view of the foregoing, Wilson's Estate is to receive $65,000 of defendant's $300,000 insurance policy. This amount accounts for the loss to Mr. Stapleton of Wilson's services, the loss to Mr. Lucero of Wilson's parental guidance, as well as any pain, suffering or "impact terror" Wilson may have suffered as a result of the accident.

### Hilda Everett

Hilda Everett, age 49 at the time of the accident, sustained fractures to her right ulna and radius, comminuted fractures to her left proximal and lateral humerus, a compound fracture of her left femur, and blunt impact injuries, lacerations and puncture wounds to her head and face, injuries to her neck, pelvis, left knee, left hip, left foot, face, teeth and gums and scarring. Everett was hospitalized for 49 days and underwent three surgeries[3] as a result of her injuries. Although Everett had a medical history of rheumatoid arthritis and underwent total knee arthroplasty for her left knee in 1997, her doctors' records indicate that in part as a result of the accident, Everett suffers from a limited range of motion in her left lower extremity and left upper

---

[3]On January 10, 2003, Everett underwent open reduction and internal fixation for her right ulna and radius fracture which included the insertion of a 10-hole recon plate and screws for the ulna fracture and the insertion of T plates and screws for the radial fracture. On January 11, 2003, Everett underwent open reduction and internal fixation for her left distal femur fracture using a 12-hole LISS plate fixator device and screws. On January 13, 2003, Everett underwent open reduction and internal fixation for her left distal humerus fracture using a 9-hole pelvic recon plate and screws.

extremity, and largely as a result of the accident, suffers from a considerable limitation in her right upper extremity. Plaintiff was unable to ambulate and was confined to a wheelchair from the date of the accident, until December 2003, after which she was able to ambulate with a walker and then a cane. Everett's medical expenses total over $100,000, half of which were defrayed by no-fault insurance, and has suffered out-of-pocket expenses of approximately $13,500. Every four months Everett visits her orthopedic surgeon and dentist.

Although she was not employed at the time of the accident, Everett was last employed on or about November 1, 2001 as an attorney for the New York Stock Exchange earning approximately $100,000 per year. As a result of her injury, Everett claims that she is unable to return to work and has nearly exhausted her savings and retirement funds.

In view of the foregoing, Everett is to receive $70,000 of defendant's $300,000 insurance policy. This amount accounts for Everett's injuries, pain and suffering, loss of income, and past, present and prospective medical expenses associated with the accident.

## Handan Kayisoglu

At the time of the accident, Handan Kayisoglu, then age 32, had no history of medical or psychiatric conditions, and was a self-employed visual designer with a college education in marketing and graphic arts. Although Kayisoglu's counsel states that Kayisoglu did not lose consciousness, a psychiatric report dated April 1, 2003, indicates that she temporarily lost consciousness during the accident. As a result of the accident, she sustained a fracture of her right distal ulnar shaft (dominant wrist) requiring surgery[4], multiple pelvic, hip and sacral

---

[4]On January 10, 2003, Kayisoglu underwent open reduction and internal fixation for her right ulna shaft fracture which included the insertion of a one-third tubular 6-hole plate, 3 cortical screws and 2 locking screws. Such hardware will likely need to be surgically removed.

fractures, multiple facial fractures and lacerations with resulting nerve damage and scarring, injuries to the jaw, brain injuries, headaches, dizziness, pain, impaired memory and concentration and depression. Kayisoglu spent 11 hours in the emergency room and was hospitalized for ten days following the accident. She received physical therapy for one month at home and did not leave her home for two months after her discharge from the hospital. Kayisoglu's psychiatrist concludes with a "high degree of medical certainty" that due to the accident, Kayisoglu suffers from, among other things, depression, lack of motivation and energy, impaired executive function, headaches and memory deficit. Psychotherapy was recommended for attention, concentration and cognitive enhancement.

In view of the foregoing, Kayisoglu is to receive $60,000 of defendant's $300,000 insurance policy. This amount accounts for Kayisoglu's injuries, pain and suffering, loss of income, as well as past, present and prospective medical expenses associated with the accident.

### Jannell Turner

At the time of the accident, Janell Turner, then age 30, worked as a graphic designer and was enrolled in a full-time art program from which she took a leave of absence due to her injuries. It appears from her medical records that Turner may have temporarily lost consciousness during the accident, but for the most part was aware of the situation at the site of the accident. Thereafter, Turner was taken by ambulance to the hospital, where she spent approximately 12 hours prior to her release. She was treated for the removal of glass shards from her face and multiple facial and scalp lacerations, ranging from .5 inches to 2 inches, many of which have left noticeable and permanent scarring over two years after the accident. Turner also complained of and was examined and/or treated for blurry vision, conjunctivitis, and pain and

swelling in her right knee. Moreover, Turner received frequent psychotherapy over the course of 18 months to treat her anxiety and post-traumatic stress, which, according to her certified social worker, was a "clear" result of the accident. The same social worker notes that Turner "did very well in therapy[.]"

In view of the foregoing, Turner is to receive $35,000 of defendant's $300,000 insurance policy. This amount accounts for Turner's injuries, pain and suffering, loss of income, if any, as well as past and prospective medical expenses associated with the accident.

**Mei Lin**

At the time of the accident, Mei Lin, then age 36, had an "unremarkable" medical history, a college education and was employed at Canal Street Plastics, the site of the accident. It appears that Lin remained conscious during the course of the accident and was taken by ambulance to the hospital. As a result of the accident, Lin suffered from imbedded glass shards and debris in her left eye and face and numerous lacerations on the face, arms and hands. Lacerations to the nose and left eyebrow required suturing. Lin's medical records from January 2003 reflect that Lin suffered fractures to her left and right nasal bones with slight displacement, resulting in a "posttraumatic nasal deformity with airway obstruction" and injury to the septum. Lin's plastic surgeon believes to a "reasonable degree of medical probability" that these injuries were caused by the accident. Lin's plastic surgeon also stated that plaintiff needed a reconstructive surgical procedure to correct the nasal deformity, which may cost as much as $25,000, and "surgical scar revisions of the nose and eyebrow" which may cost up to $15,000, neither of which estimate included hospitalization, anesthesia and assistants.

In view of the foregoing, Lin is to receive $35,000 of defendant's $300,000 insurance policy. This amount accounts for Lin's injuries, pain and suffering, loss of income, if any, as well as past, present and prospective medical expenses associated with the accident.

**Ibrahim Diallo**

At the time of the accident, Ibrahim Diallo, then age 28, had no history of medical or psychiatric conditions and "worked in a store"[5]. Diallo's hospital admitting records reflect that he had lost consciousness during the accident, but arrived at the emergency room by ambulance, alert and with stable vital signs. He did, however, complain of chest pains and had a laceration on his scalp and one on his forehead, both of which were sutured in the emergency room. Diallo was hospitalized for three days. Moreover, his medical records reflect that he had fractured two ribs and suffered recurring pain in his lower back and left leg, pain in the cervical spine region, pain in the upper and mid back, numbness and tingling in his left upper and left lower extremities, headaches, vertigo, muscle spasms and bulging cervical and intervertebral discs in his lumbosacral spine, and scarring on his face and scalp.

In view of the foregoing, Diallo is to receive $35,000 of defendant's $300,000 insurance policy. This amount accounts for Diallo's injuries, pain and suffering, loss of income, as well as past and prospective medical expenses associated with the accident.

---

[5]Diallo's submission is otherwise devoid of any mention of employment status or level of education.

# CONCLUSION

The Court directs that, as provided in the Mediation Agreement, the above-named federal plaintiffs shall execute the necessary General Releases and submit to the undersigned a Stipulation of Dismissal in each of the above-referenced actions, in exchange for the distribution of funds from the defendant's insurance policy, within twenty one days of the date of this order.

**SO ORDERED.**
Dated: July 19, 2005
       Brooklyn, New York

                                      Kiyo A. Matsumoto
                                      United States Magistrate Judge
                                      Eastern District of New York